IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANETTE HILL-PILCHER,                                    3:12-cv-01863-MA

                    Plaintiff,                    OPINION AND ORDER

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

D. JAMES TREE
3711 Englewood Avenue
Yakima, Washington 98902

        Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

KATHY REIF
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, Washington 98104

        Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Janette Hill-Pilcher, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act.  See 42 U.S.C. §§ 401-434, 1381-1383f.  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  For the reasons set forth below, I reverse the final decision of the Commissioner and remand for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed her applications for SSI and DIB on January 15, 2009, alleging disability due to a "knee injury in skating accident, ruptured tendons in wrist, depression, [and] short term memory loss."  Tr. 145.  Her applications were denied initially and upon reconsideration.  A hearing was held before an Administrative Law Judge (ALJ) on December 7, 2010, at which plaintiff was represented by counsel and testified.  In addition, Donald Pilcher, plaintiff's husband, testified at the hearing. Vocational Expert (VE) Paul Morrison was also present throughout the hearing and testified.

On January 6, 2011, the ALJ issued a decision finding that plaintiff is disabled within the meaning of the Act, but found that

plaintiff's onset date of disability was July 8, 2010, well after plaintiff's alleged onset date, date last insured, and application date.    After the Appeals Council declined review of the ALJ's decision, plaintiff timely filed a complaint in this court.

## FACTUAL BACKGROUND

Born on November 6, 1956, plaintiff was 50 years old on the alleged onset date of disability, and 54 years old on the date of the hearing.    Plaintiff has a high school equivalency and no past relevant work.    Tr. 151.    Plaintiff alleges her conditions became disabling on January 1, 2007.

In addition to her hearing testimony, plaintiff submitted two Adult Function Reports.    Tr. 154-61, 179-88.    Marie Ho, M.D., examined plaintiff and submitted an evaluative opinion with respect to plaintiff's physical conditions.    Tr. 299-305.    Roland Dougherty, Ph.D., performed a psychological evaluation and submitted a report.    Tr. 306-18.    The record additionally contains several opinions from treatment providers.    On July 8, 2010, Marjorie Henderson, M.D., submitted an opinion relevant to plaintiff's physical and mental conditions.    Tr. 383-84.    Dianna Kallis, ARNP, submitted two opinions.    Tr. 385-86, 406-07.    Lisa Vickers, ARNP, submitted a Psychiatric Evaluation.    Tr. 387-91.    Christopher J. Clark, M.Ed., submitted an opinion primarily concerning plaintiff's psychological conditions.    Tr. 229-35, 394-

95.    Finally, Robert N. Greene, M.D., submitted an opinion concerning plaintiff's hand and wrist impairments.    Tr. 402-03.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.    Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).    Each step is potentially dispositive.    The claimant bears the burden of proof at Steps One through Four.    Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).    The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform.    See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date, January 1, 2007.    See 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.; Tr. 17.

At Step Two, the ALJ determined that since the alleged onset date of January 1, 2007, plaintiff's left knee injury, post right wrist fracture, and right thumb extensor pollicis longus rupture were severe impairments.    Beginning July 8, 2010, the ALJ found that plaintiff's left knee arthritis, depression, anxiety disorder, and avoidant personality traits are severe impairments as well. See 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 17-19.

At Step Three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 19-20.

The ALJ found that prior to July 8, 2010, plaintiff had the residual functional capacity (RFC) to perform light work; could frequently climb ramps and stairs, balance, stoop, crouch, and crawl; could not climb ladders, ropes, or scaffolds; could not kneel; had to avoid concentrated exposure to hazards; and could perform multistep tasks requiring no more than superficial interaction with the general public and coworkers.  Tr. 20-25.  As of July 8, 2010, however, the ALJ further limited plaintiff to sedentary work and unskilled, multistep tasks requiring no more than superficial interaction with the general public and coworkers. Tr. 25-26.

At Step Four, the ALJ found that plaintiff has no past relevant work.  See 20 C.F.R. §§ 404.1565, 416.965; Tr. 26.

At Step Five, however, the ALJ found that prior to July 8, 2010, jobs existed in significant numbers in the national economy that plaintiff could perform, including Small Products Assembler, and Paper Sorter and Recycler.  Beginning July 8, 2010, however, the ALJ found that there were no jobs plaintiff could perform.  See 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a); Tr. 26-27.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act before July 8, 2010, but became disabled beginning on that date.

## ISSUES ON REVIEW

Plaintiff raises three primary arguments on appeal. First, plaintiff argues that the ALJ improperly excluded her mental impairments at Step Two before July 8, 2010. Second, plaintiff argues that the ALJ improperly rejected her testimony. Third, plaintiff argues that the ALJ erroneously found that her onset date of disability was July 8, 2010.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner

6 - OPINION AND ORDER

must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.  Step Two

Plaintiff first argues that the ALJ erroneously failed to list her mental impairments as severe impairments before July 8, 2010 at Step Two of the sequential analysis.  The claimant bears the burden of proving that she has a severe medically determinable impairment at Step Two.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996).  Step Two is a de minimis screening device designed to dispose of groundless claims.  Id. at 1290.  Once the ALJ has found an impairment medically determinable it must be considered in the rest of the sequential evaluation.  See 20 C.F.R. 416.945(a)(2). Where the ALJ fails to list a medically determinable impairment at Step Two, but nonetheless considers the limitations posed by the impairment in the RFC, any error at Step Two is harmless.  Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

I agree with plaintiff that the ALJ erred in failing to include plaintiff's mental impairments, including depression and anxiety disorder, at Step Two for the period before July 8, 2010. Nonetheless, I conclude this error was harmless because the ALJ accounted for plaintiff's mental impairments in the pre-2010 RFC. As the ALJ discussed in his decision, there is evidence plaintiff

was being treated for depression as early as May 31, 2007, with the first mental illness-related assessment being dated January 29, 2008, and subsequent treatment records and evaluative opinions reflecting the diagnosis. Tr. 18-19, 234, 278. This is sufficient to pass Step Two's *de minimis* screening device. See Smolen, 80 F.3d at 1290. The error was harmless, however, because the ALJ included limitations in the pre-2010 RFC to accommodate plaintiff's mental limitations. Tr. 20-21 (limiting plaintiff to multistep tasks requiring no more than superficial interaction with the public and coworkers), Tr. 18-19, 24-25 (discussing the medical evidence with respect to plaintiff's mental impairments); See Lewis, 498 F.3d at 911.

## II.  **Plaintiff's Credibility**

Plaintiff next argues that the ALJ erred in discrediting her testimony as to the period of alleged disability before July 8, 2010. In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen, 80 F.3d at 1281-82. Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so. Id. at 1281.

If an ALJ finds that the claimant's testimony regarding her subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the December 7, 2010 hearing, plaintiff testified that a fall while roller skating in 2008 resulted in a fractured right wrist and ruptured tendon in her thumb, and that she could only lift "under two pounds without feeling weakness." Tr. 43. In addition, plaintiff reported that she has left knee impairments that cause pain, and prevent her from walking more than a block without weakness, from being on her feet more than two-and-a-half hours in an eight hour day, and only being able to stand for 15 minutes at a time. Tr. 45-46. Plaintiff testified that she was forced to leave her prior job as a cashier because she had difficulty remembering register codes and suffered from anxiety and panic attacks. Tr. 46-47.

As to her daily activities, plaintiff testified that she wakes up and drinks coffee, waits for her medication to kick in, and does household chores with her husband's help.  Tr. 48.  Plaintiff testified that she can drive and goes to the store, but does not like to go out by herself.  Tr. 49.  Plaintiff reported that she sleeps "okay," but that she tosses and turns throughout the night and has "very low to moderate" energy levels during the day.  Tr. 49.  Plaintiff testified that she occasionally has feelings of guilt or worthlessness, and that she will sometimes hear faint voices or music when going to bed.  Tr. 50.

In her first Adult Function Report, dated March 13, 2009, plaintiff reported that in a typical day she wakes up, uses the restroom, drinks "a few cups" of coffee before showering and dressing, takes her daughter to school, watches television and plays computer games, has an afternoon snack and picks her daughter up from school, makes dinner, does household chores, and goes to bed.  Tr. 154.  Plaintiff reported that her knee and wrist pain wakes her up at night.  Tr. 155.  As to cooking, plaintiff reported that she prepares meals for her daughter, but sometimes skips meals herself and needs help opening jars and some packages.  Tr. 156. Plaintiff reported that she is able to perform light housework, such as dishes, mopping, dusting, and laundry, but cannot do yard work and needs help with items over 15 or 20 pounds.  Id.

Plaintiff reported that she can go out of the house for shopping or other reasons, but that she finds it uncomfortable because she does not like crowds. Tr. 157. Plaintiff listed her hobbies as watching television, playing computer games, and reading books, but noted that she does "too much of these activities now." Tr. 158. Plaintiff noted that she has problems getting along with friends and family because "they seem too judgmental." Tr. 159.

Plaintiff checked that her conditions affect her abilities to lift, squat, stand, walk, kneel, climb stairs, remember, concentrate, understand, follow instructions, use hands, and get along with others. Id. Plaintiff reported that she can only walk "a few blocks" before needing 15 to 30 minutes of rest. As to following instructions, plaintiff noted that she follows written instructions better than spoken instructions, although she usually has to read instructions more than twice. Id. Plaintiff reported difficulty getting along with authority figures because she is intimidated by them and feels they are judgmental. Tr. 160. Plaintiff reported that she can lift 10 to 20 pounds with her injured right hand, but that it has limited range of motion and weakness in grasping and gripping. Tr. 161. In her second Adult Function Report completed September 4, 2009, plaintiff reported substantially similar activities and limitations. Tr. 179-88.

The ALJ rejected plaintiff's testimony to the extent she claimed a disabling condition before July 8, 2010 because her

11 - OPINION AND ORDER

activities of daily living were inconsistent with her allegations, plaintiff's allegations were inconsistent with the medical record, and plaintiff demonstrated a poor work history.  I conclude that these reasons, taken together, constitute clear and convincing reasons to reject plaintiff's allegations of disabling conditions before July 8, 2010.

The ALJ properly cited inconsistency between plaintiff's activities and her alleged limitations as a reason to discredit her testimony.  Most notably, plaintiff's report of roller skating in January of 2008 is manifestly inconsistent with her allegation of a disabling knee condition stemming from an injury in March of 2007.  See, e.g., Tr. 45-46, 154-61, 219, 267, 299-300.  In addition, the ALJ also reasonably found plaintiff's testimony that she plays computer games, prepares meals, and performs household chores on a daily basis to be inconsistent with her report of extensive dominant right hand and wrist limitations to the point of having trouble lifting more than two pounds or holding a coffee cup.  E.g., Tr. 43-44, 154, 158.

Even more convincing is the ALJ's citation of inconsistency between plaintiff's allegations and the medical record.  The ALJ specifically reasoned that contrary to plaintiff's allegations of ongoing, severe impairments, plaintiff's conditions had improved or stabilized with treatment.

Plaintiff's allegations of serious, ongoing hand and wrist limitations stemming from her January, 2008 injury is belied by a medical record that demonstrates that plaintiff's hand and wrist were largely healed by May of that year.  On January 3, 2008, plaintiff presented to the emergency room with wrist pain and swelling secondary to an injury suffered while roller skating the night before.  Tr. 219.  An x-ray taken that day revealed a "mild acute impaction fracture" of the "distal radius."  Tr. 226.  Four days later, Dr. Greene ordered "[c]onservative fracture care."  Tr. 265.  The next week, plaintiff reported that she was "doing well" and that her wrist was "not really irritating her."  Tr. 263.  On January 28, Dr. Greene found "excellent healing of the minimally displaced distal radius," and removed her cast.  Tr. 262.

Two weeks later, however, Dr. Greene found that the wrist fracture had healed, but plaintiff now complained of the inability to extend her thumb.  Tr. 261.  Dr. Greene noted that "[w]hen we look at the tendons in the snuffbox, one does not appreciate the extensor pollicis longus," and accordingly referred plaintiff to John J. Hwang, M.D., for treatment of a pollicis longus rupture. Id.  On February 29, 2008, Dr. Hwang performed a successful tendon transfer surgery.  Tr. 250.  By March 28, plaintiff began to demonstrate increased range of motion, and the next week she was able to become "more aggressive and regular with her exercises." Tr. 241.  By April 8, 2008, plaintiff continued to make "small

13 - OPINION AND ORDER

gains" with her thumb, reported only 3/10 pain, and demonstrated "nicely improved" wrist range of motion. Tr. 242. After missing some therapy appointments due to an unrelated surgery, plaintiff was "stiff with wrist range of motion as well as thumb motion." Tr. 242-43. By the end of April, however, plaintiff had "recently upgraded" her exercise program, and by the second week of May, plaintiff was "advancing nicely" with respect to both her wrist and thumb. Tr. 243-44. On May 21, 2008, plaintiff reported only 2/10 pain, and at her final appointment with Dr. Hwang, the doctor noted plaintiff demonstrated full range of motion, relieved symptoms, and normal sensation. Tr. 256.

The ALJ reasonably found, then, that plaintiff's allegations of significant, ongoing wrist problems were inconsistent with the medical record, which indicated plaintiff's wrist injury had improved dramatically by May of 2008. On September 17, 2009, after plaintiff complained to her doctor of right hand weakness, an x-ray revealed "no radiographic abnormality." Tr. 360-61. Thus, the ALJ reasonably rejected the extent of plaintiff's wrist allegations and properly relied on the note from Dr. Kennedy on September 23, 2009 that plaintiff could lift 20 pounds occasionally, with frequent lifting or carrying of up to 10 pounds. Tr. 20-22, 410.

The ALJ also reasonably found that plaintiff's depression and anxiety were similarly controlled by treatment. The ALJ properly noted that while plaintiff was diagnosed with depression as early

as May 31, 2007, with the first mental illness-related assessment dated January 29, 2008, her mental health worker, Christopher J. Clark, thought plaintiff's mental health was sufficiently stable to recommend that plaintiff simply "resume antidepressant medication therapy with her primary care provider." Tr. 229-35, 278, 394-95. Similarly, on October 1, 2009, Dianna Kallis, ARNP, found that plaintiff's depression was stable on medication.   Tr. 477. Similarly, on July 27, 2010, Ms. Kallis noted that plaintiff's "symptoms of anxiety/depression [are] stable" on medication.   Tr. 385.   The ALJ's finding that plaintiff's allegations of significant mental impairments before July 8, 2010 was inconsistent with the medical record was reasonable.   The ALJ reasonably discredited plaintiff's allegations of disabling limitations before July 8, 2010 because her complaints were inconsistent with evidence that medical treatment improved and stabilized plaintiff's conditions.

Finally, the ALJ noted that plaintiff's testimony that her inability to work was caused by her medical conditions was undercut by the fact that plaintiff had never maintained substantial employment, suggesting she had low propensity to work.   An ALJ may cite a claimant's poor work history as a reason to discredit testimony that medical conditions cause the claimant's inability to work.   See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ's finding in this case is supported by substantial evidence.   Indeed, plaintiff's earnings report indicates that she

has had very minimal earnings in all but a few years since 1974.
Tr. 137.   While, as the ALJ indicated, this is not the primary
reason to reject plaintiff's testimony, the ALJ reasonably cited it
as one factor in discrediting plaintiff's allegations of disabling
conditions.   In sum, I conclude the ALJ cited clear and convincing
reasons for rejecting plaintiff's testimony of disabling
impairments before July 8, 2010.

### III.  Onset Date of Disability

Plaintiff finally argues that the ALJ erred in finding an
onset date of disability of July 8, 2010.   Plaintiff argues that
the ALJ should have found an earlier onset date of disability
because each of her three major categories of impairments –
plaintiff's wrist condition, knee condition, and mental conditions
– began affecting her before July 8, 2010.   In addition, plaintiff
maintains the ALJ erred in failing to call a medical expert at the
hearing to assist in determining the onset date.

The ALJ's determination of the onset date of disability must
be supported by substantial evidence.   Swanson v. Sec'y Health &
Human Servs., 763 F.2d 1061, 1064-66 (9th Cir. 1985); Whaley v.
Colvin, No. CV 12-04888 SS, 2013 WL 1855840, at *10 (C.D. Cal. Apr.
30, 2013).   "[W]here a record is ambiguous as to the onset date of
disability, the ALJ must call a medical expert to assist in
determining the onset date."   Armstrong v. Comm'r Soc. Sec. Admin.,

160 F.3d 587, 590 (9th Cir. 1998) (relying on SSR 83-20, <u>available</u> <u>at</u> 1983 WL 31249).

As discussed above, both plaintiff's knee and wrist injuries can be traced to discrete injuries.  For many of the same reasons cited above, however, the ALJ's finding that those injuries did not render plaintiff disabled as of those dates is supported by substantial evidence.  There is ample evidence in the record that plaintiff recovered from both injuries relatively shortly after she suffered the injuries.  <u>See, e.g.</u>, Tr. 219 (plaintiff roller skating within nine months after her knee injury), 244 (plaintiff's wrist and thumb pain reported at a 2 out of 10 five months after the injury), 256 (plaintiff's thumb symptoms relieved, with full range of motion and normal sensation, five months after injury). With respect to plaintiff's mental conditions, while there is evidence that plaintiff was being treated for depression beginning sometime before May 31, 2007, as discussed above, the ALJ's determination that plaintiff's mental impairments were not disabling as of that time, or at the time of the first depression-related assessment in January of 2008, was supported by substantial evidence.

The ALJ's disability finding, then, must have been based on subsequent developments.  The ALJ appears to have relied on the evaluation of Marjorie L. Henderson, M.D., dated July 8, 2010, in finding that plaintiff became disabled on that date.  Tr. 383-84.

Dr. Henderson's evaluation, however, does not clarify the ambiguity in the record as to when plaintiff's conditions became disabling because neither Dr. Henderson's evaluation, nor the accompanying medical record, contain any clear indication that there was any material worsening of plaintiff's conditions closely associated with that date. Thus, because the record was ambiguous as to the onset date of disability once the ALJ properly rejected disability as of the dates of plaintiff's injuries, the ALJ was required to "call a medical expert to assist in determining the onset date." Armstrong, 160 F.3d at 590.

## IV.   Remand

After finding the ALJ erred, this court has discretion to remand for further proceedings or for immediate payment of benefits. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

In this case, further proceedings are necessary for the ALJ to obtain the testimony of a medical expert for the purpose of determining the onset date of disability. Thus, this case is remanded for further proceedings consistent with this opinion.

///

///

18 - OPINION AND ORDER

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this __3__ day of December, 2013.


                                    _Malcolm F. Marsh_____
                                    Malcolm F. Marsh
                                    United States District Judge